UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIEL SIMOES,                     :
        Plaintiff,                 :
                                   :
        v.                         :        CA 05-147 S
                                   :
JO ANNE B. BARNHART,               :
Commissioner, Social Security      :
Administration,                    :
        Defendant.                 :

### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

    This is an action for judicial review of a final decision of
the Commissioner of the Social Security Administration
("Commissioner"), denying Disability Insurance Benefits ("DIB"),
under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. §
405(g).  The matter has been referred to me for preliminary
review, findings, and recommended disposition.  28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner has committed legal error and that his decision that
Plaintiff was not under a disability is not supported by
substantial evidence.  Accordingly, I recommend that Defendant's
Motion for Order Affirming the Decision of the Commissioner
(Document ("Doc.") #11) ("Defendant's Motion to Affirm") be
denied and that this matter be remanded to the Commissioner for a
new hearing.

### Facts and Travel

    Plaintiff was born on June 20, 1955.  (Record ("R.") at 82,
90)  He has a tenth grade education and past relevant work
experience as an electrician and laborer.  (R. at 19, 91, 100,
105, 108, 112, 113, 127, 134)  On November 5, 1999, while hunting
he fell about ten feet from a tree stand, (R. at 137), landing on

his back, (R. at 137), and sustaining a compression fracture of
the T7 vertebral body, (R. at 147).  Plaintiff was unable to work
for approximately four or five months, and he was prescribed
Vicodin for pain.  (R. at 143)  After returning to light duty, he
continued to have pain and to take Vicodin.  (Id.)  On January 3,
2001, his treating physician noted that the fracture had healed
nicely, that Plaintiff had normal motor strength, that he was
working full time, and that Plaintiff took Vicodin at night to
sleep.  (R. at 144)  He was given a final prescription for
Vicodin to last three months.  (Id.)

On January 18, 2001, while at work Plaintiff slipped on ice
and fell on his right shoulder.  (R. at 154, 301)  He sustained a
torn rotator cuff.  (R. at 303)  He underwent surgery to repair
the tear on April 3, 2001.  (R. at 173)  Although Plaintiff
participated in extensive physical therapy, (R. at 229-300),
Plaintiff did not return to work, (R. at 36-37).

Plaintiff filed an application for DIB on or about July 31,
2002, alleging disability beginning April 3, 2001, based on a
right rotator cuff tear and a back injury.  (R. at 82-84, 98-107)
The Commissioner denied Plaintiff's claims initially, (R. at 53-
56), and on reconsideration, (R. at 60-63).  Plaintiff timely
requested a hearing before an administrative law judge ("ALJ").
(R. at 64)  On May 26, 2004, the ALJ held a hearing at which
Plaintiff, who was represented by counsel, appeared and
testified.  (R. at 30-49)  The ALJ rendered a decision on August
26, 2004, finding that Plaintiff was not disabled.  (R. at 15-29)
The Appeals Council denied Plaintiff's request for review, (R. at
9-11), making the ALJ's decision the final decision of the
Commissioner.

Plaintiff filed a complaint (Doc. #1) in this Court on April
11, 2005.  Defendant on June 14, 2005, filed her answer (Doc.
#2).  The matter was subsequently referred to this Magistrate

Judge for a Report and Recommendation.  See Order of 6/30/05
(Doc. #3).  Plaintiff's Brief was filed on November 14, 2005,[1]
and Defendant's Motion to Affirm (Doc. #11) was filed on May 3,
2006.

## Issue

The issue for determination is whether the decision of the
Commissioner that Plaintiff is not disabled within the meaning of
the Act, as amended, is supported by substantial evidence in the
record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is
limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).
Although questions of law are reviewed de novo, the
Commissioner's findings of fact, if supported by substantial
evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. §
405(g)).  The determination of substantiality is based upon an
evaluation of the record as a whole.  Brown v. Apfel, 71

---

[1] Plaintiff filed this action pro se.  He was given multiple
extensions for the purpose of either obtaining counsel or filing a
brief himself.  See Order of 8/31/05 (Doc. #6); Order of 10/3/05 (Doc.
#8); Order to Show Cause dated 11/2/05 (Doc. #9).  On November 14,
2005, Plaintiff submitted a letter to the Court, stating that he was
unable to find an attorney to represent him in this action and
reiterating his claim that he was unable to work.  See Letter to Court
from Plaintiff dated 10/31/05.  Plaintiff also set forth reasons why
the decision of the ALJ was erroneous.  See id.  Giving deference to
Plaintiff's pro se status, the Court entered an order on November 23,
2005, allowing the letter to be treated as Plaintiff's brief.  See
Order Allowing Letter to be Treated as Plaintiff's Brief (Doc. #10).

[2] The Supreme Court has defined substantial evidence as "more than
a mere scintilla.  It means such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v.
Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217
(1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I.
1992).

F.Supp.2d at 30 (citing <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."))(second alteration in original).   The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.   <u>Id.</u> at 30-31 (citing <u>Colon v. Sec'y of Health & Human Servs.</u>, 877 F.2d 148, 153 (1st Cir. 1989)).   "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.   Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."   <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991)(citations omitted); <u>see also</u> <u>Brown v. Apfel</u>, 71 F.Supp.2d  at 31.

<b>Law</b>

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act.   <u>See</u> 42 U.S.C. § 423(a).   The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."   42 U.S.C. § 423(d)(1)(A).   A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national

---

[3] Plaintiff met the insured status requirements as of April 3, 2001, the alleged onset of his disability, and was insured through at least August 26, 2004, the date of the ALJ's decision.   (R. at 18, 24)

economy. <u>See</u> 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. § 404.1521(a) (2006). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. <u>See</u> <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520(a) (2006); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. <u>See</u> 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. <u>See</u> <u>Seavey</u>, 276 F.3d at 4. "The applicant has the burden of production and proof at

---

[4]Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2006). Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

<u>Id.</u>

the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability on April 3, 2001, (R. at 19, 24); that Plaintiff has disorders of the musculoskeletal system, has chest pain, and is status post right rotator cuff surgery which constitute severe impairments, (R. at 20, 24); that these severe impairments do not meet or equal any listed impairment, (R. at 21, 24); that Plaintiff's allegations regarding his limitations are not totally credible, (R. at 22, 24); that Plaintiff has the residual functional capacity ("RFC") to perform light work reduced due to the ability to do no more than occasional reaching with the right arm, (R. at 23, 25); that this RFC precludes performance of any of Plaintiff's past relevant work, (id.); that, alternatively, significant numbers of jobs at the sedentary level exist in the regional/national economy which are within Plaintiff's RFC, even if he is unable to perform his past relevant work, (R. at 24, 25); and that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, (id.).

### Errors Claimed

Reading Plaintiff's brief with an extra degree of solicitude because of his pro se status, see Raineri v. United States, 233 F.3d 96, 100 (1st Cir. 2000)(applauding district court's solicitude towards pro se litigant), Plaintiff alleges that:

1) the ALJ erred by not adequately developing the record, see
Plaintiff's Brief; 2) the ALJ neglected to discuss Plaintiff's
pain and the effect of pain on his ability to concentrate; 3) the
ALJ's RFC analysis and determination were not based on
substantial evidence in the record, see id.; and 4) the ALJ did
not satisfy the burden of proving the existence of a significant
number of jobs in the national economy which Plaintiff could
perform, see id.

### Discussion

### I.  The ALJ's development of the record

Plaintiff contends that the ALJ erred by inadequately
developing the record in three ways.  First, Plaintiff claims
that there are two pieces of evidence missing.  See Plaintiff's
Brief.  He states that "opinion evidence from my doctors is
missing," Plaintiff's Brief, and also that there are "[]x-rays
... show[ing] severe degenerative disc disease of my back."  Id.
Second, Plaintiff asserts that after injuring his back in 1999 he
returned to work only for limited duty and that the ALJ
overlooked this alleged fact.  See id.

### A.  The alleged missing evidence

Because Social Security proceedings are not adversarial in
nature, the ALJ has a duty to develop an adequate record from
which a reasonable conclusion can be drawn.  Heggarty v.
Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).

> [T]his responsibility increases in cases where the
> appellant is unrepresented, where the claim itself seems
> on its face to be substantial, where there are gaps in
> the evidence necessary to a reasoned evaluation of the
> claim, and where it is within the power of the
> administrative law judge, without undue effort, to see
> that the gaps are somewhat filled--as by ordering easily
> obtained further or more complete reports or requesting
> further assistance from a social worker or psychiatrist
> or key witness.

Heggarty v. Sullivan, 947 F.2d at 997 (citing Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)); see also Rice v. Chater, No. 95-179-JD, 1996 WL 360240, at *10 (D.N.H. Apr. 23, 1996)(noting that the "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appea[r]s before him")(quoting Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051 (6th Cir. 1983)(quotation marks and citations omitted)).   However, the First Circuit has emphasized "that we do not see such responsibilities arising in run of the mill cases," Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d at 598, and has indicated that there must be some "special circumstances," id., such as a claimant who is "obviously mentally impaired to some degree ...," id., to trigger it.   In the instant matter, Plaintiff was represented by counsel at the hearing before the ALJ.   (R. at 30, 32)   Thus, the increased responsibility to develop the record which may exist in special circumstances is clearly not present here.   See Heggarty v.Sullivan, 947 F.2d at 997.

        At the outset of the hearing, the ALJ and Plaintiff's counsel discussed the state of the record.   (R. at 32)   The ALJ stated that the "exhibit file ha[d] just been updated and would number somewhere between 1 and about 20 in the F section."   (Id.) The ALJ then asked Plaintiff's attorney if he had seen the file and counsel responded that he had.   (Id.)   The ALJ asked counsel "is [the record] complete?," id., and counsel replied that it "is with the new additions," (id.).   The ALJ was entitled to rely upon this response.   See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are

8

adequately explored."); <u>Sears v. Bowen</u>, 840 F.2d 394, 402 (7th Cir. 1988)("[A]n ALJ is entitled to presume that a claimant represented by counsel in the administrative hearings has made his best case.").

In addition, the ALJ had the record supplemented.  During the course of his testimony, Dr. John A. Pella, the medical expert ("ME"), referred to Plaintiff's cardiac catheterization which was scheduled for the following month.  (R. at 40)  At the conclusion of the hearing, the ALJ requested that Plaintiff's counsel provide the results of this procedure.  This was in fact done because the ALJ discussed the results of that procedure in his decision.  (R. at 21)

Moreover, when a claim is made that an ALJ shirked his or her duty to properly develop the record, a reviewing court "must determine whether the [alleged] incomplete record reveals evidentiary gaps which result in prejudice to the plaintiff." <u>Mandziej v. Chater</u>, 944 F. Supp. 121, 130 (D.N.H. 1996) (alteration in original)(internal quotation marks omitted).  In other words, Plaintiff "must show both that the ALJ failed to discharge his duty to adequately develop the record and that []he was prejudiced as a result." <u>Hagemike v. Chater</u>, No. 94-595-B, 1996 WL 211798, at *3 (D.N.H. Feb. 26, 1996); <u>see also</u> <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1235 (7th Cir. 1997)("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.")(citations and internal quotation marks omitted); <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995)("[R]eversal due to [an ALJ's] failure to develop the record is only warranted where such failure is unfair or prejudicial.").  Plaintiff "must demonstrate what the ALJ would have learned from an adequate inquiry and what difference that would have made in the outcome." <u>Hagemike v. Chater</u>, 1996 WL 211798, at *3.

Here, while Plaintiff contends that x-rays exist which indicate "severe degenerative disc disease of my back ...," Plaintiff's Brief, the shoulder and back x-rays included in the record do not reveal such an impairment, (R. at 389). Plaintiff presented at Cunha Family Chiropractic Center on May 11, 2004, complaining of severe lower back and left hip pain and right shoulder achiness, according to Michael J. Cunha, D.C., and was referred for x-rays. (R. at 388) Those x-rays showed evidence of a prior rotator cuff repair, mild degenerative changes involving the glenohumeral joint, widening of the AC joint with partial resection of the distal end of the clavicle, and mild narrowing of the subacromial joint space. (R. at 389) An x-ray of Plaintiff's lumbosacral spine was also taken, showing normal prevertebral soft tissues, moderate L5-S1 disc space narrowing with mild to moderate degenerative changes present at the L2-3 disc, and mild degenerative changes involving the L3 and L4 disc levels. (Id.) Finally, an x-ray was taken of the sacroiliac joints which showed mild degenerative changes of the right SI joint. (R. at 390) Based on the x-rays in the record Plaintiff suffers from at most moderate degenerative changes in his back and right shoulder. (R. at 389-90)

Although Plaintiff asserts that there are x-rays showing severe degenerative disc disease in his back, he has not specified where these x-rays can be found or from which doctor they originate. Similarly, regarding the opinion evidence from Plaintiff's doctors which he claims is missing, Plaintiff has not indicated which reports he believes were omitted, nor has he indicated how he was prejudiced by the allegedly incomplete opinion evidence. Nothing in his submission to this Court provides any insight into what those opinions would have revealed.

Finally, the Court finds that Plaintiff has waived any claim of error based on missing records by failing to raise it at or before the administrative hearing.  As discussed previously, Plaintiff's counsel stated that the record was complete.  There was no indication from either Plaintiff or his attorney that the record was incomplete as to his physicians' records or opinions. If Plaintiff believed that further opinion evidence from his doctors was needed, he should have raised the issue before the ALJ.  Thus, Plaintiff cannot now complain about the state of the record.  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (finding plaintiff waived claim that ALJ erred where plaintiff did not raise the issue before ALJ); cf. Latulippe v. Comm'r, SSA, No. 95-82-SD, 1996 WL 360363, at *8 (D.N.H. Mar. 7, 1996)("Plaintiff provides no reason or excuse for his failure to bring the matter to the attention of the court sooner.").

**B.  Plaintiff's return to work after his 1999 back injury**

Plaintiff claims that after he injured his back in 1999 he returned to work "only for limited not full duty," Plaintiff's Brief, and that "this never came out at my last hearing," see id. To the extent Plaintiff contends that he did not return to full time work, the record clearly contradicts this claim.  Following this injury on November 5, 1999, (R. at 137), he was treated on a regular basis by Dr. David G. Quigley.  (R. at 137-144)  Dr. Quigley's treatment notes reflect a steady improvement in Plaintiff's condition.  (R. at 143-144)  On April 20, 2000, Dr. Quigley recorded that Plaintiff had been back at work for six weeks.  (R at 143)  A June 22, 2000, office note indicates that Plaintiff is working "full time."  (R. at 144)  By August 23, 2000, Plaintiff was "working 12 hours daily[,] giving out the tools for the new Wyeth plant they are building."  (Id.)  On October 30, 2000, Dr. Quigley wrote that Plaintiff was "[w]orking 90 hours a week, averaging 11 hours per day."  (Id.)  Dr.

Quigley's final treatment note for this injury is dated January 3, 2001, and states in part: "[Fracture] healed nicely.  Normal motor strength.  Pt. is working full time.  Takes Vicodin to sleep at night.  Given scrip for #60 to last 3 mos.  No refills." (R. at 144)

The record also contains the February 27, 2003, consultative report of Carlo Brogna, M.D., of Coastal Neurology.  Dr. Brogna reviewed Plaintiff's medical records, including Dr. Quigley's office notes, and wrote that Plaintiff fell:

> on his back ... sustaining trauma resulting in compression fracture of T7-8 vertebra.  He had a lot of pain on that side but there was no involvement of the spinal cord.  X-rays in the Fall of 1999 showed the compression.  He was followed by Dr. Quigley for this and slowly he improves.  By March 2000, he rarely was taking any pain pills and seemed to be improving.  By the end of April 2000 ... [Plaintiff] had been back to work for six weeks.  At times, he was having some discomfort, however, he was making progress and he continued on light duty.  He steadily improved and by October 2000, he was working "90 hours a week, averaging 11 hours a day."  He gets pain off and on, sometimes radiating to the side.  **By this time, he obviously had recovered from his vertebral fracture.**

(R. at 329)(internal quotation marks omitted)(bold added).  Based on Dr. Quigley and Dr. Brogna's notes, it is clear that Plaintiff had healed completely from his back injury and was working full-time, and in some cases overtime, by the latter half of 2000.  Thus, the ALJ's determination that Plaintiff returned to work on a full-time basis, (R. at 20), is based on substantial evidence in the record.

To the extent that Plaintiff claims that, although he was able to work upwards of ninety hours per week, he was still unable to perform all of the duties of his regular job, such contention strikes the Court as dubious at best.  Moreover, it is irrelevant because the ALJ found at Step Four that Plaintiff

12

could not return to his past work.  (R. at 23)   Thus, whether
Plaintiff returned to work for only limited duty (as opposed to
unlimited duty) after his 1999 back injury would not change the
outcome of this case.

## II.   The ALJ's analysis of Plaintiff's pain

Plaintiff further asserts that the restriction on his
ability to concentrate due to pain and pain medication (side
effects) was never taken into consideration.  Specifically,
Plaintiff states that he "lived on [V]icodin," Plaintiff's Brief,
and that "no one ever factored in what my pain does to my ability
to concentrate.  Try concentrating when you live on narcotic pain
medication."  Plaintiff's Brief.  Defendant counters that
although "Plaintiff now alleges that he had difficulty with
concentration, he did not mention this in his testimony before
the ALJ, and Plaintiff's health care providers never noted this
problem in their medical reports."  Defendant's Memorandum in
Support of the Commissioner's Decision (Doc. #11) ("Defendant's
Mem.") at 19.  Additionally, Defendant states that "the ALJ's
finding [regarding Plaintiff's credibility] is supported by
substantial evidence, and he properly considered Plaintiff's
pain, and gave valid reasons for his credibility finding pursuant
to 20 C.F.R. [§] 404.1529 and Social Security Ruling 96-7p."  Id.
at 18.

The ALJ found that Plaintiff "has severe impairments that
can be reasonably expected to produce pain causing functional
limitations on work-related activities, but the complaints
suggest a greater severity of impairment than can be shown by the
objective medical evidence alone."  (R. at 22)  He further
determined that Plaintiff's "statements and the testimony at the
hearing concerning his impairments and their impact on his
ability to work are found credible only to the extent of the

13

established level of exertion in view of the objective findings."
(Id.)

Avery v. Secretary of Health & Human Services, 797 F.2d 19
(1st Cir. 1986), requires an ALJ to consider the following
factors in determining the effect of pain on a claimant's RFC:

> 1. The nature, location, onset, duration, frequency,
> radiation, and intensity of any pain;
> 2. Precipitating and aggravating factors (e.g., movement,
> activity, environmental conditions);
> 3. Type, dosage, effectiveness, and adverse side-effects
> of any pain medication;
> 4. Treatment, other than medication, for relief of pain;
> 5. Functional restrictions; and
> 6. The claimant's daily activities.

Avery, 797 F.2d at 29; see also 20 C.F.R. § 404.1529(c)(3)(i)-
(vii) (2006) (same); SSR 96-7p, available at 1996 WL 374186, at
*3 (July 2, 1996) (same). Here, the ALJ acknowledged his
obligation to:

> consider all symptoms, including pain, and the extent to
> which these symptoms can reasonably be accepted as
> consistent with the objective medical evidence and other
> evidence based on the requirements of 20 CFR § 404.1529,
> and Social Security Ruling 96-7p ... [and] also consider
> any medical opinions, which are statements from
> acceptable medical sources, which reflect judgments about
> the nature and severity of the impairments and resulting
> limitations (20 CFR §§ 404.1527 and Social Security
> Rulings 96-2p and 96-6p).

(R. at 22)

Despite this acknowledgment, the Court finds the ALJ's
compliance with Avery to be problematic. First and foremost, the
ALJ's entire examination of Plaintiff as to pain consisted of
just two questions. After Plaintiff stated that he had a

"constant throbbing pain in my shoulder,"[5] (R. at 37), the ALJ
asked:

> Q     Do you take anything for that pain or --
>
> A     Yes.
>
> Q     -- do you just live with it?
>
> A     No.  I take Vicodin for pain, and I take all
>       kinds of other medication now too.

(R. at 38)  The ALJ did not ask Plaintiff about the dosage,
effectiveness, and side effects of this medication.  He did not
ask Plaintiff about his daily activities.  He also did not ask
Plaintiff about treatment other than medication for relief of
pain.

The ALJ's failure to address the dosage, effectiveness, and
side effects of Plaintiff's medication is especially significant
in the instant case where the treating physician who was
prescribing the Vicodin, David E. Leibowitz, M.D., found
Plaintiff to be totally disabled, (R. at 359).  While the
determination of disability is an issue reserved for the
Commissioner, the fact that the physician prescribing the
narcotic medication believed that Plaintiff was totally disabled
at the very least heightens the importance of an inquiry into the
dosage and side effects of that medication.  Further adding to
its importance is the fact the ALJ did not mention Dr. Leibowitz
in the decision and did not explain why he apparently rejected or
discounted Dr. Leibowitz's opinion.  While an ALJ need not
discuss every piece of evidence, the opinion of a treating

---

[5] Plaintiff made this statement in the process of explaining the
injury to his rotator cuff which he had suffered in January of 2001.  (R.
at 34-37)

physician, who treats a plaintiff for a significant period of time[6] and believes that the plaintiff is disabled should be addressed.

The record indicates that Dr. Leibowitz repeatedly prescribed Vicodin for Plaintiff in 2003, (R. at 378), and that he continued to prescribe it in 2004, (R. at 386).  The dosage varied from 1-2 pills twice a day, (R. at 378), to 1-2 pills a day, (R. at 378, 386).  At the hearing, the ME testified with reference to Plaintiff's shoulder that he "continues with problems to the present time and some pain requiring I guess narcotic-level analgesics." (R. at 41)  Despite the ME's testimony, Plaintiff's testimony, and the evidence in the record of repeated prescriptions for Vicodin, the ALJ did not make further inquiry regarding how the medication affected Plaintiff. Thus, the Court finds that there is merit in Plaintiff's complaint "that no one ever factored in what my pain does to my ability to concentrate.  Try concentrating when you live on narcotic pain medication."  Plaintiff's Brief.

It is true that in his decision the ALJ attempted to address the Avery factors, relying primarily upon information in the written record as opposed to that which was obtained at the hearing before him.  (R. at 22)  He stated that Plaintiff's current medications included Vicodin, Wellbutrin, and Lipitor and that Plaintiff had reported that the medications caused stomach pain and nausea, but helped the pain.  (Id.)  He wrote that "[t]he record does not indicate any other significant side-[e]ffects from these medications."  (Id.)  In terms of functional limitations, the ALJ referred to the testimony of the ME who agreed with the findings of Danny Humbyrd, M.D., an orthopedic surgeon.  (Id.)  (However, as discussed in the following

---

[6] The record indicates that Dr. Leibowitz treated Plaintiff from December 31, 2002, through at least January 14, 2004.  (R. at 363, 382)

sections, the ALJ apparently rejected their findings.)  Regarding
daily activities, the ALJ relied upon the information contained
in Exhibit 4E/2, (R. at 121), a form which Plaintiff had
completed on August 15, 2002, some twenty-one months before the
hearing.  (Id.)  Notwithstanding this attempt to satisfy the
requirements of Avery, the Court concludes that the failure of
the ALJ to question Plaintiff at the hearing regarding most of
the Avery factors, especially the dosage and effect of the
Vicodin which he was taking and his daily activities at the time
of the hearing, constitutes legal error.

     The Court, however, wishes to state that it would not
ordinarily recommend remand based on an error of this nature
where, as here, the Plaintiff was represented by counsel at the
hearing before the ALJ and Plaintiff's counsel at the conclusion
of that hearing declined to question Plaintiff further and stated
that he believed that the ALJ "pretty much touched on
everything," (R. at 48).  The fact that Plaintiff had not been
asked about the dosage, effectiveness, and adverse side effects
of the Vicodin and also about his daily activities should have
been apparent to counsel.  Counsel should have either asked those
questions or brought the omission to the attention of the ALJ.
The Court is disinclined to allow a represented Plaintiff to
remain silent while an ALJ commits an obvious legal error and
then on appeal to this Court seeks reversal or remand based on
that error.  Here, however, the Court has also concluded that the
apparent decision of the ALJ to reject the opinion of the ME and
of Plaintiff's treating physician regarding Plaintiff's
functional limitations is not supported by substantial evidence.
See Discussion Sections III & IV infra.  Accordingly, as remand
is warranted on that ground also, the Avery violation should also
be addressed on remand.

17

### III.  The ALJ's RFC finding

In his written decision, the ALJ found that Plaintiff retained the RFC to perform light work,[7] but that his capacity for light work was slightly reduced in that Plaintiff "can do no more than occasional overhead horizontal reaching with the right hand."  (R. at 23)  Plaintiff argues that his physical limitations due to his January, 2001, shoulder injury preclude him from performing any work on a full-time basis.  See Plaintiff's Brief.  Plaintiff alleges that he cannot sit, stand, or walk for long periods of time as a result of his severe degenerative disc disease.  See id.  Additionally, he notes that he does not have use of one arm.  See id.

The ALJ appears to have relied upon the state agency medical consultants in determining Plaintiff's RFC finding.  (R. at 23)  Yet at the hearing, the ME testified that he agreed with the assessment of Plaintiff's treating physician, Dr. Humbyrd, regarding Plaintiff's exertional abilities, (R. at 46), and Dr. Humbyrd had limited Plaintiff to "lifting five pounds maximum on the right side, no above waist work on the right side ...."  (R. at 309)  The ALJ took specific note of the ME's testimony in this

---

[7] Light work

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2006).

regard:

> Upon thorough review of the medical evidence, Dr. Pella, the medical expert, testified that the record consists primarily of orthopedic issues and he agreed with the findings of the orthopedic surgeon, Dr. Humbyrd. In that the claimant was limited to lifting five pounds on the (non-dominant) right side with limitations in abduction and doing above the waist work on the right side. Dr. Pella opined that with limitations in lifting, the claimant could still do fine finger manipulation.

(R. at 22)

The wording of the above paragraph suggests that the ALJ intended to accept the opinion expressed by the ME (and, thus, the opinion of Dr. Humbyrd). However, later in the decision, it is plain that the ALJ rejected these opinions *sub silentio*. The RFC which the ALJ found, (R. at 23, 24), does not limit Plaintiff to a five pound maximum lifting capability with his right hand and it does not bar all overhead reaching. The ALJ offers no reason for rejecting the opinions of the Dr. Pella and Dr. Humbryd as to these restrictions.

Compounding the problem, as discussed in the following section, it appears from the transcript that the ALJ may have intended the VE to consider these restrictions in responding to the hypothetical which the ALJ attempted to pose. (R. at 45-48) However, the hypothetical was so poorly stated that while the VE may have factored into his answer the prohibition against overhead reaching, it is clear that it did not include the five pound maximum lifting capability.

Because the ALJ provides no reason or explanation for rejecting the functional limitations expressed by the treating physician and the ME, I find that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence. Accordingly, remand is warranted on this ground, and I so recommend.

19

## IV. The Commissioner's burden of proving the existence of alternative jobs in the national economy which Plaintiff could perform

Once "a claimant has shown his inability to perform previous work, then the [ALJ] has the burden of showing that the claimant can engage in other forms of substantial gainful activity considering his age, education, and work experience." Ramos v. Sec'y of Health & Human Servs., 514 F.Supp. 57, 64 (D.P.R. 1981)(citation omitted). In order for an ALJ to satisfy the requirements of such a burden he/she "must produce evidence on the skills of the particular claimant and the availability of work which matches those skills." Id. (citation and internal quotation marks omitted). The "usual procedure used to accomplish said task [is] by having a vocational expert provide the necessary evidence to link a claimant's residual skills with the requirements of various jobs in the national economy." Id. "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1ˢᵗ Cir. 1982).

The ALJ determined that although Plaintiff's exertional limitations did not allow him to perform a full range of light work, a significant number of jobs existed in the national economy which Plaintiff could perform. (R. at 24, 25) Plaintiff argues that the ALJ erred in relying on the VE's testimony. In his brief, Plaintiff states that the "vocational person kept talking about sedentary jobs but how do you do a sedentary job

20

with only one arm, and then the judge found that I could do light work. I don't even know the difference between sedentary and light work, but I know I can't do either." Plaintiff's Brief.

It is difficult to determine where in the transcript the hypothetical begins. The Court sets forth the colloquy between the ALJ and VE which preceded the VE's testimony regarding the availability of other jobs.

Q       Okay. So in this case, as you have seen it developed so far, we're left with basically no transferrable skills. We're back into the unskilled area. Is that correct?

A       Right.

ALJ:    Now, the treating physician, as identified by Dr. Pella, has indicated -- by the way, Doctor, do you agree with that that the record supports this five-pound usage of the and limited to finger dexterity five pounds -- what is lifting away from the body that's called -

ME:     Abduction.

ALJ:    Abduction.

ME:     Ab is away.  Ad is to -

ALJ:    Okay.

ME:     -- from Latin.

ALJ:    Okay. Thank you. Do you have a Latin scholar in your family?

ME:     Yes, I do agree with the assessment in the record.

ALJ:    Okay. And what else were the other? Did he make any other comments on the movement of the arm?

ME:     No.

ALJ:    Okay. So, basically what apparently we have

is the ability to use the non-dominant hand at a bench?  Would that be about -

ME:    That's correct, Your Honor.

ALJ:   -- your understanding of it?

ME:    That would be my assessment of his capacity.

ALJ:   Strictly talking about the shoulder impairment?

ME:    Um-hum.

ALJ:   So, if we're going with unskilled being able to have fine dexterity at a bench type --

VE:    Um-hum.

ALJ:   -- but no other, for this purpose, no other restriction -

VE:    Okay.

ALJ:   -- what can you identify as able to be performed in -- what jobs exist in significant numbers?

VE:    Do you have an exertional level?

ALJ:   Yes.  At any.  Lets start with any exertional level.  This is the only thing: we can't use the non-dominant arm.

VE:    So, you're looking at essentially assembly and inspection and some production laborers.

ALJ:   What exertional level?

VE:    Well, for instance I could give you examples in sedentary.  In assembly it would be Rhode Island and southeastern Massachusetts numbers 13,000, inspection 6,000, and production laborers 3500.

ALJ:   Once you limit that to sitting at a bench using the non-dominant hand in this matter you're pretty much limited to the sedentary unskilled jobs aren't you?

22

> VE:   Yeah.  There would be a few light assembly jobs
>       that are standing at a bench kind of situation
>       but significantly less numbers than would be
>       in sedentary.   So the bulk of that work would
>       be sedentary.
>
> ALJ:  Okay.
>
> VE:   The bulk of the appropriate work given your
>       hypothetical would occur within in the sedentary
>       range.

(R. at 45-48)

    As reflected above, the ALJ did not include in the
hypothetical the five pound maximum lifting capability for the
right hand as determined by Dr. Humbyrd and with which the ME,
Dr. Pella, agreed.  The jobs which the VE identified as being
within the capabilities of the hypothetical plaintiff were all
sedentary, (R. at 47), and sedentary jobs require that a person
be able to lift up to ten pounds.[8]  According to the ME and Dr.
Humbyrd, Plaintiff lacks this capacity with his right hand.  The
ALJ gave no reason for rejecting their opinions regarding this
limitation, and the Court is unable to discern any basis in the
record for doing so.

    Equally troubling, in his written decision the ALJ found
that Plaintiff had the RFC to perform light work which was only
"slightly reduced," (R. at 23), by an inability to do "no more

---

[8] Sedentary work

involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files,
ledgers, and small tools. Although a sedentary job is defined
as one which involves sitting, a certain amount of walking and
standing is often necessary in carrying out job duties. Jobs
are sedentary if walking and standing are required
occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2006).

than occasional overhead horizontal reaching with the right hand," (id.).   The finding that Plaintiff has the ability to do occasional overhead reaching with his right hand conflicts with the absolute prohibition stated in the hypothetical that the plaintiff could not use the non-dominant arm, (R. at 47).   Thus, the ALJ's statement in his decision that he "asked the VE to assume the existence of an individual with the same age, education, work experience and residual functional capacity as the claimant," (R. at 24), is not correct.   The RFC stated by the ALJ in his hypothetical is different than the RFC stated in his decision.

It could be argued that since the VE testified that there are 22,500 jobs available for a claimant who cannot use his non-dominant arm for any reaching (R. at 47), those same jobs must be available for a claimant like Plaintiff whom the ALJ found in his written decision to be able to do occasional overhead reaching with his non-dominant hand.   However, the Court is troubled by the ALJ's obvious confusion (or lack of memory) regarding what RFC he asked the VE to assume at the hearing.   While this confusion is understandable given the manner in which the question was asked, it raises a disturbing question.   If the ALJ was confused about the RFC which he posited in the hypothetical, was the VE also confused?   Even with the benefit of a written transcript, deciphering the ALJ's convoluted hypothetical is no easy task.

Moreover, on the state of this record, the Court is unable to find that substantial evidence supports the ALJ's conclusion that Plaintiff has the RFC for light work (which requires lifting up to twenty pounds at a time and frequent lifting of up to ten pounds) when the ME and treating physician both opined that Plaintiff could only lift a maximum of five pounds with his right hand and the ALJ offers no explanation for rejecting these

24

opinions.  See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)
("Because the ALJ's hypothetical assumed that fatigue did not
pose a significant functional limitation for the claimant, and
because the medical evidence did not permit that assumption, the
ALJ could not rely on the vocational expert's response as a basis
for finding claimant not disabled."); Arocho v. Sec'y of Health &
Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Consequently,
the matter should be remanded for a new hearing.

### Summary

In summary, Plaintiff's claims regarding missing evidence
and alleged error by the ALJ in finding that Plaintiff had
returned to working full time in January of 2001 are rejected.
However, I find that the ALJ committed legal error by failing to
comply with the requirements of Avery in that at the hearing he
did not inquire about the dosage and side effects of Plaintiff's
narcotic medication and also about Plaintiff's daily activities.
I also find that the ALJ erred by failing to provide any
explanation for not accepting the opinions of the ME and Dr.
Humbyrd, Plaintiff's treating physician, regarding functional
restrictions, specifically the five pound maximum lifting
capability of Plaintiff's right hand and the prohibition against
any overhead reaching with that hand.  In addition, the ALJ's
finding that there are a significant number of jobs in the
national economy that Plaintiff could perform is not supported by
substantial evidence because the hypothetical question asked of
the VE at the hearing was seriously flawed.  It did not include
the functional limitations prescribed by the treating physician
and endorsed by the ME, and it did not match the RFC of Plaintiff
as stated in the ALJ's decision.

### Conclusion

For the reasons discussed above, I recommend that
Defendant's Motion to Affirm be denied and that this matter be

remanded to the Commission for a new hearing.  At that hearing, the ALJ should make inquiry regarding Plaintiff's pain in accordance with the requirements of <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19, 20-21 (1st Cir. 1986), especially with regard to the side effects of pain medication, and consider whether such medication affects Plaintiff's RFC.  In addition, the ALJ shall consider the functional restrictions established by Plaintiff's treating physician, Dr. Humbyrd, and either include those restrictions in a hypothetical posed to the VE or explain why those restrictions have been rejected.  The ALJ should also address the opinion of Dr. Leibowitz, a treating physician, that Plaintiff is disabled.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin
_____
DAVID L. MARTIN
United States Magistrate Judge
December 12, 2006

26